ORIGINAL

FILED
OCT 27 2006
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

06-733 C

| | |
|---|---|
| AEROPLATE CORP.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE and agency of the UNITED STATE OF AMERICA,<br><br>Defendant. | USCFC NO.<br><br>APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION: POINTS AND AUTHORITIES: DECLARATION OF MARY WILLIAMS; DECLARATION OF WILLIAM L. BRUCKNER (BID PROTEST) |

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and RUSCFC 65, Plaintiff Aeroplate Corp. ("AEROPLATE") moves this Court for a Temporary Restraining Order, ("TRO"), enjoining and restraining Defendant, United States Department of Agriculture, Deschutes National Forest ("USDOA") from issuing a Notice to Proceed (an "NTP"), on Contract No. AG-04GG-C-06-0043, Lava Lands Visitor Center Remodel & Addition, Newberry National Volcanic Monument-Lava Lands Visitor Center, Bend, Oregon. (hereinafter the "CONTRACT"), to Randolph Construction Services., ("RANDOLPH"), pending the outcome of AEROPLATE's post-award bid protest. AEROPLATE is concurrently filing a Complaint for Declaratory Relief on the CONTRACT.

In the alternative and if the USDOA has already issued an NTP to RANDOLPH, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and RUSCFC 65, Plaintiff AEROPLATE moves this Court for a Temporary Restraining Order, ("TRO"), enjoining and restraining Defendant, USDOA from continuing to allow RANDOLPH to proceed with the work on Contract No. AG-04GG-C-06-0043, Lava Lands Visitor Center Remodel & Addition, Newberry National Volcanic Monument-Lava Lands Visitor Center, Bend, Oregon. pending the outcome of AEROPLATE's post-award bid protest. AEROPLATE is concurrently filing a Complaint for Declaratory Relief on the CONTRACT.

Additionally, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and

RUSCFC 65, AEROPLATE, moves this Court for a preliminary injunction, ("PI"), pursuant to a hearing set by this Court as to whether the Defendant, USDOA should be enjoined and restrained from issuing a Notice to Proceed on the CONTRACT, pending this Court's adjudication of AEROPLATE's Complaint for Declaratory Judgment.

Additionally, and in the alternative, if an NTP has been already issued to RANDOLPH, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and RUSCFC 65, AEROPLATE, moves this Court for a preliminary injunction, ("PI"), pursuant to a hearing set by this Court as to whether the USDOA, should be enjoined and restrained from allowing RANDOLPH to proceed with the work on the CONTRACT, pending this Court's adjudication of AEROPLATE's Complaint for Declaratory Judgment.

It is AEROPLATE's position based upon the that the USDOA conducted a "best value" valuation that departed from the basis for evaluation called out in the solicitation, thereby depriving AEROPLATE, not only of a fair opportunity to compete, but also of recognition as the Solicitation's best value. The USDOA improperly rejected the best value proposal in favor of a proposal that revealed itself as a better value only when examined in light of factors different from those set forth in the SOLICITATION.

This Application is made on the ground that immediate and irreparable injury will result to AEROPLATE unless the activity described above is enjoined pending adjudication of AEROPLATE's action for Declaratory Judgment. This Application will be based on this Application, Memorandum of Points and Authorities, the Statement of Plantiff's attorney, William L. Bruckner, Affidavits and supporting evidence attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.

### STATEMENT OF THE LAW

The Court of Federal Claims in W & D Ships Deck Works, Inc. v. United States, 39 Fed. Cl. 638 (1997), opined a four-part test for the issuance of a TRO/PI:

> When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction.

> Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 268 (1997); National Football League Properties, Inc. v. Coniglio, 554 F.Supp. 1224, 1225 (D.D.C.1983). Plaintiff must show: (1) that the plaintiff will suffer a specific irreparable injury if performance is not enjoined; (2) that the plaintiff is likely to succeed on the merits of the claim; (3) that the harm to plaintiff outweighs any harm to defendant; and (4) that granting the requested relief serves the public interest. Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir.1983). For the purpose of ruling on this motion for a TRO, the court has assumed all facts alleged in the complaint to be true, as in ruling on a motion to dismiss. See Neitzke, 490 U.S. at 326-27, 109 S.Ct. at 1832-33.

B.

STATEMENT OF THE FACTS

On or about May 19, 2006, the USDOA issued a Request for Proposal for Solicitation No. AG-04GG-S-06-0024, requesting proposals for "Full & Open" competition for a "best value" negotiated procurement for Lava Lands Visitor Center Remodel & Addition, Newberry National Volcanic Monument-Lava Lands Visitor Center, Bend, Oregon. (hereinafter the "SOLICITATION"). The SOLICITATION became Contract No. AG-04GG-S-06-0043 on or about October 2, 2006 with the award to RANDOLPH. *Attachment A.*[1]

Proposals were to be evaluated on the basis that: (1) Past Performance & (2) Technical Capability technical factors are of equal importance with (3) Proposed Timeline/Schedule being slightly less important. The technical evaluation factors "are approximately equal to cost or price." *Attachment A, page 44.*

According to the USDOA only two proposals were received. AEROPLATE and, apparently RANDOLPH submitted proposals. *Attachment B.* AEROPLATE's initial price for base plus all options was $1,101,690.00. *Attachment A, page 3.* AEROPLATE was advised by letter dated July 13, 2006 that AEROPLATE's proposal was "amongst the most highly rated proposals..." *Attachment C.* After discussions AEROPLATE's price was reduced to $889,364.00. RANDOLPH's final price after discussions was $898,200.00. *Attachment D.* Allegedly, after a period of evaluation of said proposals, and even though AEROPLATE's

[1] Attachment __refers to a document attached to the Declaration of Mary Williams and William Bruckner

proposal was approximately $8,836.00 lower that the RANDOLPH proposal, RANDOLPH was awarded the SOLICITATION on or before September 19, 2006. *Attachment E.* AEROPLATE received the notice of award on or about September 25, 2006 and immediately requested a formal debriefing. *Attachment F.*

AEROPLATE timely requested a debriefing by letter dated September 25, 2006 and by facsimile dated September 29, 2006. AEROPLATE was "debriefed" by certified letter dated October 2, 2006, mailed on October 4, 2006, received by the destination post office on October 10, 2006 and by AEROPLATE on October 18, 2006. *Attachment G.* Between September 29, 2006 and October 18, 2006 AEROPLATE made numerous phone calls to the USDOA requesting an oral debriefing. The USDOA did not return any of AEROPLATE's phone calls and other than the very succinct letter dated October 2, 2006 has never provided the 48 C.F.R. 15.506 debriefing. *Declaration of Mary Williams.*

The USDOA's "debriefing" letter of October 2, 2006 indicates that AEROPLATE and RANDOLPH were rated "Good" in all areas of the "technical factors" except Past Performance, where RANDOLPH is listed as "Good" and AEROPLATE listed as "Acceptable". The letter indicates that both proposals were considered acceptable but RANDOLPH had a "technically superior" proposal. Under the Technical section both AEROPLATE and RANDOLPH were rated equally, "Good". *Attachment G*

Under 48 C.F.R. 15.506 the contracting officer should normally chair any debriefing. No debriefing was held and, even if the October 2, 2006 letter complies with the minimum requirements of 48 C.F.R. 15.506 the contracting officer did not sign the letter to AEROPLATE. The Contracting Officer for this SOLICITATION was listed in Paragraph L-6 of the SOLICITATION as Ben R. McGrane of the Deschutes National Forest. Under 48 C.F.R. 15.506 AEROPLATE has a right to know issues related to past performance. No information was provided. *Attachment G & H.*

Clearly the reason given for the selection of RANDOLPH, a technically superior proposal, was not true. According to the letter both RANDOLPH and AEROPLATE submitted equal proposals that were technically "Good" and thereby equal. Under the Past Performance

evaluation RANDOLPH and AEROPLATE were rated differently but that difference was apparently not significant enough to make a difference in the "best value". Secondly, AEROPLATE has discussed the evaluation of each project listed under the Past Performance section of its proposal and each contracting officer has given AEROPLATE an "Outstanding" or "Exceptional". *Declaration of Mary Williams.*

USDOA's departure from the stated criteria for evaluation, *inter alias*, considered in awarding the SOLICITATION to RANDOLPH, make it clear that the USDOA conducted an evaluation that departed from the basis for evaluation called out in SECTION M—EVALUATION FACTORS FOR AWARD, thereby depriving AEROPLATE of a fair opportunity to compete, and also of recognition that AEROPLATE was the SOLICITATION's "best value" and award of the Contract. It is clear that the USDOA selected RANDOLPH as a better value only when examined in light of a basis which is different than set forth in the SOLICITATION.

C.

## ARGUMENT

### SCOPE OF REVIEW OF AGENCY DECISIONS

When the government solicits bids on a contract, it automatically enters into an implied-in-fact contract to treat the bidders fairly. *IMS Servs., Inc. v. United States*, 33 Fed.Cl. 167, 178 (1995); *see also* *Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200, 1203 (1974); *Crux Computer Corp. v. United States*, 24 Cl.Ct. 223, 225 (1991). This implied-in-fact contract between the government and bidders on the underlying contract requires the government to fully and fairly consider all bids submitted in accordance with the invitation for bids. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 447 (Fed.Cir.1996); *Ingersoll-Rand Co. v. United States*, 2 Cl.Ct. 373, 375 (1983). The government is said to breach the implied contract "if its consideration of offers is found to be 'arbitrary and capricious toward the bidder-claimant.' " *Central Ark. Maintenance, Inc. v. United States*, 68 F.3d 1338, 1341 (Fed.Cir.1995) (quoting *Keco*, 492 F.2d at 1203). "[O]nly violations that amount to a breach of the government's

implied contract to consider an offer fairly and honestly will support the court's exercise of its injunctive powers." Central Ark., 68 F.3d at 1342; United Int'l Investigative Servs., Inc. v. United States, 41 Fed.Cl. 312, 318 (1998)

The determinative question is whether defendant violated the "arbitrary and capricious" factor in the APA standard when the USDOA considered AEROPLATE'S proposal and awarded the CONTRACT to RANDOLPH. 5 U.S.C. § 706(2)(A). In determining whether the agency has acted arbitrarily or capriciously towards plaintiff, the court must consider four factors. Keco, 492 F.2d at 1203. Specifically, the court must determine whether: (1) there was subjective bad faith on the part of procurement officials; (2) there was not a reasonable basis for the procurement decision; (3) the procuring officials acted outside the discretion entrusted to them; and (4) pertinent statutes or regulations were violated. Id. at 1203-04; Metric Sys. Corp. v. United States, 42 Fed.Cl. 306, 310 (1998). There is, however, "no requirement or implication --- that each of the factors must be present in order to establish arbitrary and capricious action by the government." Prineville, 859 F.2d at 911. Plaintiff must demonstrate by clear and convincing evidence that defendant's actions towards it were arbitrary and capricious. United Int'l, 41 Fed.Cl. at 318 (citing ECDC Envtl., L.C. v. United States, 40 Fed.Cl. 236, 241 (1998)).

AEROPLATE alleges that Keco factors (2), (3) and (4) are present.

## AEROPLATE IS ENTITLED TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

The crux of AEROPLATE's claim is that the USDOA unreasonably denied AEROPLATE the opportunity to fairly participate in the bid process for the SOLICITATION and CONTRACT because there was not a reasonable basis for the decision to award to RANDOLPH, the USDOA acted outside the discretion entrusted to them and pertinent statutes or regulations were violated. AEROPLATE sets forth basic concepts of law and facts which show that (1) AEROPLATE will suffer irreparable injury if the USDOA is not enjoined;

(2) AEROPLATE is likely to succeed on the merits of its claim; (3) the harm to AEROPLATE outweighs any harm to the USDOA; and (4) granting of the requesting relief serves the public interest.

I. <u>AEROPLATE Will Suffer Severe Harm If A Temporary Restraining Order And A Preliminary Injunction Is Not Issued</u>

AEROPLATE will suffer irreparable injury unless the Temporary Restraining Order and Preliminary Injunction sought in this case are immediately granted. Monetary damages will not be sufficient to address this harm. The denial of the right to have its bid fairly and lawfully considered constitutes irreparable harm. Additionally, the loss of a major contract is considered to cause irreparable harm when the bid is not fairly and lawfully considered. <u>Dairy Maid Dairy Inc. v. United States</u>, DC Va., No. 2:93cv260, November 5, 1993 (Memorandum Opinion).

Alternatively, if the USDOA's Notice to Proceed is issued and/or RANDOLPH is permitted to actually mobilize and/or commence performance or if an NTP has already been issued allowed to continue performance, this Court might ultimately determine that, although the award should have been made to AEROPLATE, it would now be too costly to disturb the incorrect award to awardee precisely because of the excessive cost to the Government of having awardee, begin performance, and demobilize, and then having AEROPLATE mobilize.

If preliminary injunctive relief is not granted the USDOA will be allowed to have RANDOLPH mobilize and commence performance or to continue performance on the contract, thus diminishing the likelihood that this Court will recommend the appropriate corrective action if it finds that the Contract was improperly awarded. Without injunctive relief from this Court, AEROPLATE may effectively be precluded from meaningful relief and will suffer irreparable harm as a direct result of the USDOA's deviation from the SOLICITATION's guidelines and procedures. AEROPLATE will suffer irretrievable money losses as well, if AEROPLATE is unfairly deprived of the opportunity to fully and fairly litigate its bid protest as Congress determined and intended when it enacted the statutory framework. <u>Art-Metal -</u>

USA, Inc. v. Solomon, 473 F.Supp. 1, 4 n.4 (D.D.C. 1978); Pan American World Airways. Inc. v. Marshall, 439 F.Supp. 487, 497 (S.D.N.Y.1977); see also Tri-State Generation v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir.1986) (where plaintiff cannot collect monetary damages, harm is irreparable.).

Absent the granting of the injunction, AEROPLATE will be effectively deprived of a remedy for the USDOA's violation of AEROPLATE's clear right, under applicable regulations, to be allowed to participate fairly in the bid process. As a result of the USDOA's arbitrary and capricious conduct, AEROPLATE faces the loss of the profits which are not recoverable. A contractor seeking damages from the award of a contract to a competitor in the Court of Federal Claims can only recover damages which do not exceed the bid preparation costs. The Court of Federal Claims cannot award recovery of lost profits or of the losses caused by liquidation of assets. Keco Indus. v. United States, 192 Ct.Cl. 773, 785, 428 F.2d 1233,1240 (1970); see also S&W Mechanical v. City of Homerville, 682 F.Supp. 546, 547-548 (M.D. Ga. 1988).

As set forth at greater length in the Complaint, the effect of the USDOA's action is to impose irreparable harm upon AEROPLATE and to deprive AEROPLATE of a meaningful opportunity to participate in the aforementioned bid process. The denial of the right to have its bid fairly and lawfully considered constitutes an irreparable injury as does the loss of a major contract. Additionally, AEROPLATE's remedy at law is clearly inadequate. Absent an injunction and a temporary restraining order, AEROPLATE would effectively lose the contract.

2. **AEROPLATE Will Succeed On The Merits Of Its Claim**

AEROPLATE will succeed on the merits of its claim because the USDOA clearly in direct violation of the SOLICITATION provisions, failed to comply with the evaluation procedure by not properly scoring AEROPLATE's proposal as the best value. *Attachments A to G; Declaration of Mary Williams.*

The following specific facts are evidence of the injustice AEROPLATE has been subjected to by the USDOA and why AEROPLATE will prevail on the merits of its claim.

AEROPLATE timely requested a debriefing by letter dated September 25, 2006 and by facsimile dated September 29, 2006. AEROPLATE was "debriefed" by certified letter dated

October 2, 2006, mailed on October 4, 2006, received by the destination post office on October 10, 2006 and by AEROPLATE on October 18, 2006. Between September 29, 2006 and October 18, 2006 AEROPLATE made numerous phone calls to the USDOA requesting an oral debriefing. The USDOA did not return any of AEROPLATE's phone calls and other than the very succinct letter dated October 2, 2006 has never provided the 48 C.F.R. 15.506 debriefing. *Attachments E & F; Declaration of Mary Williams.*

The USDOA's "debriefing" letter of October 2, 2006 indicates that AEROPLATE and RANDOLPH were rated "Good" in all areas of the "technical factors" except Past Performance, where RANDOLPH is listed as "Good" and AEROPLATE listed as "Acceptable". The letter indicates that both proposals were considered acceptable but RANDOLPH had a "technically superior" proposal. Under the Technical section both AEROPLATE and RANDOLPH were rated equally, "Good". *Attachment G.*

Under 48 C.F.R. 15.506 the contracting officer should normally chair any debriefing. No debriefing was held and, even if the October 2, 2006 letter complies with the minimum requirements of 48 C.F.R. 15.506 the contracting officer did not sign the letter to AEROPLATE. The Contracting Officer for this SOLICITATION was listed in Paragraph L-6 of the SOLICITATION as Ben R. McGrane of the Deschutes National Forest. Under 48 C.F.R. 15.506 AEROPLATE has a right to know issues related to past performance. No information was provided. *Attachment A, page 41; Attachment G.*

Clearly the reason given for the selection of RANDOLPH, a technically superior proposal, was not true. According to the letter both RANDOLPH and AEROPLATE submitted equal proposals that were technically "Good" and thereby equal. Under the Past Performance evaluation RANDOLPH and AEROPLATE were rated differently but that difference was apparently not significant enough to make a difference in the "best value". Secondly, AEROPLATE has discussed the evaluation of each project listed under the Past Performance section of its proposal and each contracting officer has given AEROPLATE an "Outstanding" or "Exceptional". *Declaration of Mary Williams.*

USDOA's departure from the stated criteria for evaluation, *inter alias*, considered in awarding the SOLICITATION to RANDOLPH, make it clear that the USDOA conducted an evaluation that departed from the basis for evaluation called out in SECTION M—EVALUATION FACTORS FOR AWARD, thereby depriving AEROPLATE of a fair opportunity to compete, and also of recognition that AEROPLATE was the SOLICITATION's "best value" and award of the Contract. It is clear that the USDOA selected RANDOLPH as a better value only when examined in light of a basis which is different than set forth in the SOLICITATION because there was not a reasonable basis for the decision to award to RANDOLPH, the USDOA acted outside the discretion entrusted to them and pertinent statutes or regulations were violated.

The Competition in Contracting Act of 1984, 10 U.S.C. § 2304(a)(1)(A) (1994), requires contracting agencies to obtain full and open competition through the use of competitive procedures, the dual purpose of which is to ensure that a procurement is open to all responsible sources and to provide the government with fair and reasonable prices. Western Roofing Serv., 70 Comp. Gen. 323, 325 (1991), 91-1 CPD ¶ 242 at 3.

The USDOA's evaluation and award to RANDOLPH was arbitrary, unreasonable and contrary to law; therefore, this Court should issue a Temporary Restraining Order and Preliminary Injunction. *Attachments A to H; Declaration of Mary Williams.*

3. **The Harm To AEROPLATE Outweighs Any Harm To The USDOA**

The USDOA, faces no irreparable harm if a Temporary Restraining Order and Preliminary Injunction are granted; but maybe a slight delay in the execution and performance of Contract No. AG-04GG-C-06-0043, Lava Lands Visitor Center Remodel & Addition, Newberry National Volcanic Monument-Lava Lands Visitor Center, Bend, Oregon. On the other hand, AEROPLATE will definitely suffer irreparable monetary injury; that is, AEROPLATE will for certain lose the CONTRACT.

There is no reason why any current CONTRACT performance cannot be suspended until this Court determines whether AEROPLATE is entitled to the declaratory relief it seeks.

Thus, a balancing of the hardships posed to AEROPLATE and the USDOA by the

prospect of a Temporary Restraining Order and preliminary injunctive relief demonstrates that AEROPLATE will suffer decidedly more severe harm if the Temporary Relief Order and Preliminary Injunction are denied than the USDOA will suffer if the injunction if granted.

Since the balance-of-hardship test weighs heavily in favor of AEROPLATE, a Temporary Restraining Order and/or an injunction should be issued "if, at least, grave or serious questions are presented." Jones, supra, 704 F.2d at 715 (quoting North Carolina State Ports Authority v. Dart Containerline Co., 592 F.2d 749, 750 (4th Cir. 1979)); Chalk, supra, 710 - 711. AEROPLATE's objections to the USDOA's rejection of AEROPLATE's proposal is in violation of the Competition in Contracting Act of 1984 which constitute, at the very least, questions of a grave and serious nature. Thus, AEROPLATE is entitled to an injunction even without establishing a likelihood of success on the merits. Moreover, as the previous sections illustrate, AEROPLATE's claim is likely to be vindicated on the merits.

### 4. The Public Interest Will Be Served If A Temporary Restraining Order/Preliminary Injunction Is Issued

Finally, this Court must consider whether issuance of a Temporary Restraining Order and Preliminary Injunction is in the public interest. Government agencies must comply with the laws, executive orders, and regulations under which they operate. Service v. Dulles, 354 U.S. 363 *(1957);* Pan American World Airways. Inc. v. Marshall, 439 F.Supp. 487 (S.D. N.Y. 1977). The public interest is not served when an agency fails to follow its own regulations and fails to act in a lawful and honest manner. Art-Metal - USA. Inc. v. Solomon, 473 F. Supp. 1, 8 (D.D.C. 1978).

The public interest will served by the basic fact that the public may very well get a lower bidder, save the taxpayer $8,836.00 in procurement costs and have the necessary improvements furnished to the Contract No. AG-04GG-C-06-0043, Lava Lands Visitor Center Remodel & Addition, Newberry National Volcanic Monument-Lava Lands Visitor Center, Bend, Oregon. at a less monetary cost than it would otherwise be. In addition, to the financial

benefit, the issuance of a temporary restraining order and preliminary injunction would serve the far more significant purpose of reinstating the public expectation, belief and trust on the public system and procurement contracts.

As herein it is demonstrated, the USDOA has failed to comply with applicable laws and regulations. The USDOA has abrogated the fundamental policy which underlies the Competition in Contracting Act of 1984; that the public is best served by free and open competition. To this end, it is essential that this competition, unless the national interest is truly threatened, be subject to fair and meaningful review. Accordingly, the public interest will be served by issuance of a Temporary Restraining Order and a subsequent preliminary injunction blocking the harmful results of the USDOA's foreseeable unlawful conduct.

## CONCLUSION

For all the foregoing reasons, AEROPLATE respectfully requests that this Court issue a Temporary Restraining Order and Preliminary Injunction enjoining the USDOA from issuing the Notice to Proceed, or, if a Notice to Proceed has already been issued and RANDOLPH has commenced construction directing RANDOLPH to suspend all performance, until such time as the Court makes a determination and rules on AEROPLATE's Request for Declaratory Judgment.

Dated: October 25, 2006

Respectfully submitted,

William L. Bruckner
BRUCKNER & WALKER
4550 Kearny Villa Road, Suite 209
San Diego, CA 92123
(858) 565-8300 Telephone
(858) 565-0813 Facsimile
bill@brucknerwalker.com

Attorneys for Aeroplate Corp.